ORIGINAL

# In the United States Court of Federal Claims

No. 14-1203C
(Filed: February 20, 2015)

**NOT FOR PUBLICATION**

FILED
FEB 20 2015
U.S. COURT OF
FEDERAL CLAIMS

| | |
|---|---|
| OBADIAH SAVOY DILLARD, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> THE UNITED STATES, ) <br> ) <br> Defendant. ) | Pro Se; Dismissal for Lack of Subject Matter Jurisdiction; RCFC 12(b)(1); Not in Interest of Justice to Transfer under 28 U.S.C. § 1631 |

Obadiah Savoy Dillard, Gainesville, Fla., pro se.

Courtney D. Enlow, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, D.C., for defendant.

## OPINION AND ORDER OF DISMISSAL

CAMPBELL-SMITH, Chief Judge

    Plaintiff, Obadiah Savoy Dillard, states that he was arrested on July 20, 2009 in Tampa, Florida pursuant to an arrest warrant for armed robbery of a credit union in Gainesville, Florida. Compl. 10-11,[1] Dec. 16, 2014, ECF No. 1. Stemming from this arrest, plaintiff asserts claims of false arrest, false imprisonment, malicious prosecution, use of excessive force, failure to intervene in the use of excessive force, and failure to supervise. Id. at 11-24. Plaintiff names as defendants forty-one individuals or entities, including a credit union, its owner and employees, as well as numerous Florida law enforcement officers, prosecutors, and judges, an individual described as a laborer, the governor of Florida, and a U.S. Marshal. Id. at 3-7, 11-24.

---

[1] The cited page numbers are those affixed by the court's CM/ECF system at the top of each page, as they are the only form of consistent pagination within plaintiff's complaint.

Plaintiff seeks damages in the amount of eight billion dollars. Id. at 27. Plaintiff brings his claim without counsel.

On December 29, 2014, Mr. Dillard filed an Application to Proceed In Forma Pauperis. On January 7, 2015, the court directed the Clerk Office's to return the Application to Mr. Dillard, unfiled, due to various deficiencies. Order, Jan. 7, 2015, ECF No. 4. Mr. Dillard has not refiled his Application. Nonetheless, the court considers Mr. Dillard's complaint for the sole purpose of determining whether it has jurisdiction over the complaint.

On February 12, 2015, defendant filed a motion to dismiss plaintiff's complaint under Rule 12(b)(1) for lack of subject matter jurisdiction.[2] ECF No. 5.

For the reasons explained below, the court finds it lacks jurisdiction over plaintiff's complaint. The court also finds it is not in the interest of justice to transfer plaintiff's complaint to a federal district court in which the complaint could have been brought. Accordingly, plaintiff's complaint is **DISMISSED** for lack of jurisdiction pursuant to Rule 12(b)(1) of the Rules of the U.S. Court of Federal Claims (RCFC).

---

[2] Unlike defendant, the court does not read Mr. Dillard as alleging a claim under the Americans with Disability Act of 1990 (ADA). See Def.'s Mot. 2, 5 (citing Compl. 10). Although Mr. Dillard mentions the ADA, Compl. 10, he makes no allegation against any of the forty-one defendants that could be construed as an ADA claim, that is a claim that a defendant subjected him to discrimination based on any disability he may have. While Mr. Dillard is entitled to a liberal construction of his complaint, see Erickson v. Pardus, 551 U.S. 89, 94 (2007), the court is under no obligation to consider a claim plaintiff did not state, see, e.g., Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997) ("[A] court need not credit a complaint's 'bald assertions' or 'legal conclusions' when deciding a motion to dismiss."); Beaudett v. City of Hampton, 775 F.2d 1274, 1278 (4th Cir. 1985) ("Principles requiring generous construction of pro se complaints are not, however, without limits. . . . It does not require those courts to conjure up questions never squarely presented to them.). Regardless, defendant is correct that this court would lack jurisdiction over such a claim. See Def.'s Mot. 5.

Defendant also notes that Mr. Dillard complains of losing his Social Security benefits as a result of his false imprisonment. Def.'s Mot. 6 (citing Compl. 32). As discussed infra Part II.A., the District Court of the Northern District of Florida dismissed Mr. Dillard's claims for false arrest and false imprisonment, hence Mr. Dillard could maintain no claim that relies on his reasserted false imprisonment claim.

2

I.  Subject Matter Jurisdiction

   A.  Legal Standards

The Tucker Act provides for this court's jurisdiction over "any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort." 28 U.S.C. § 1491(a)(1) (2012).

> [I]t has been uniformly held, upon a review of the statutes creating the [Court of Federal Claims] and defining its authority, that its jurisdiction is confined to the rendition of money judgments in suits brought for that relief against the United States, and if the relief sought is against others than the United States the suit as to them must be ignored as beyond the jurisdiction of the court.

United States v. Sherwood, 312 U.S. 584, 588 (1941) (internal citations omitted).

Subject-matter jurisdiction, which "involves a court's power to hear a case," may "never be forfeited or waived." United States v. Cotton, 535 U.S. 625, 630 (2002). In evaluating subject-matter jurisdiction, "the allegations stated in the complaint are taken as true and jurisdiction is decided on the face of the pleadings." Folden v. United States, 379 F.3d 1344, 1354 (Fed. Cir. 2004) (internal quotation marks omitted). "If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." RCFC 12(h)(3).

The complaint of a pro se plaintiff is generally held to "less stringent standards than formal pleadings drafted by lawyers." Haines v. Kerner, 404 U.S. 519, 520 (1972). Because Mr. Dillard is proceeding pro se, he is entitled to a liberal construction of his pleading. Erickson v. Pardus, 551 U.S. 89, 94 (2007). However, the "leniency [afforded to a pro se litigant] with respect to mere formalities" does not permit a court to "take a liberal view of . . . [a] jurisdictional requirement and set a different rule for pro se litigants." Kelley v. Sec'y, U.S. Dep't of Labor, 812 F.2d 1378, 1380 (Fed. Cir. 1987).

   B.  Evaluating Whether the Court Has Jurisdiction over Plaintiff's Claims

   1.  Plaintiff's Claims Against Non-Federal Defendants

Mr. Dillard brought claims against forty non-Federal defendants, including a credit union, its owner and employees, as well as numerous Florida law enforcement officers, prosecutors, and judges, an individual described as a laborer, and the governor of Florida. Compl. 3-7, 11-24.

This court's jurisdiction is limited to certain claims "against the United States." 28 U.S.C. § 1491(a)(1); see also Sherwood, 312 U.S. at 588. Because no claim against any of these forty defendants could be construed as a claim against the United States, the Court of Federal Claims lacks jurisdiction to hear plaintiff's claims against all forty non-Federal defendants.

    2.    Plaintiff's Claims Against a Federal Defendant

Plaintiff also brings claims against one federal defendant, Paul Triolo, whom he identifies as a U.S. Marshal. Compl. 12-13. The U.S. Marshals Service is an agency within the U.S. Department of Justice. According to plaintiff,

> [d]efendant U.S. Marshall, Paul Triolo falsely arrested & imprisoned Plaintiff and is vicariously liable [for] the assault & battery inflicted on Plaintiff by the other Defendants who responded to Defendant Triolo's A.P.B. and tracking-man hunt of Plaintiff. In violation of the 8th 5th & 14th amendments to the United States Constitution.
>
> In sum, Defendant Triolo orchestrated the manhunt without probable cause [and] caused Plaintiff injury, false arrest & imprisonment and subsequent malicious prosecution & malicious abuse of process, in conspiracy with other Defendants.

Id. Mr. Dillard adds that the U.S. Marshal participated in his arrest in Tampa, Florida. Id. at 35. Mr. Dillard's claim that a U.S. Marshal was involved in his arrest is taken as true for the purpose of determining this court's jurisdiction over his complaint. See Folden, 379 F.3d at 1354.

Mr. Dillard named Mr. Triolo, the identified U.S. Marshal, in both his individual and official capacity. Compl. 10. A suit against a federal employee acting in an official capacity is a suit against the United States. See, e.g., Simanonok v. Simanonok, 918 F.2d 947, 950 (Fed. Cir. 1990) ("[Plaintiff's] claims against the federal defendants in their official capacities . . . are in effect suits brought against the United States itself."). Accordingly, the court construes plaintiff's suit against Mr. Triolo acting in his official capacity as a suit against the United States.

Among Mr. Dillard's other complaints are his claims of false arrest, false imprisonment, and malicious prosecution, as well as vicarious liability for assault and battery allegedly committed by other law enforcement officers, which the court construes as a claim for failure to intervene in the use of excessive force. See, e.g., Post v. City of Fort Lauderdale, 7 F.3d 1552, 1560 (11th Cir. 1993) ("A police officer has a duty to intervene when another officer uses excessive force."), modified, 14 F.3d 583 (11th Cir. 1994).

4

The court liberally construes Mr. Dillard's complaint, see Erickson, 551 U.S. at 94, and considers whether Mr. Dillard could maintain his claims against a federal official acting in his individual capacity or against the United States as either state law tort claims or Fourth Amendment constitutional violations.

    a.    Plaintiff's Claims Against a U.S. Marshal Acting in His Individual Capacity

"The Tucker Act grants the Court of Federal Claims jurisdiction over suits against the United States, not against individual federal officials." Brown v. United States, 105 F.3d 621, 624 (Fed. Cir. 1997) (citing 28 U.S.C. § 1491(a)). Thus, to the extent that plaintiff alleges claims against the U.S. Marshal who was acting in his individual capacity, the Court of Federal Claims lacks jurisdiction to hear those claims.

    b.    Plaintiff's Tort Claims Against the United States

"[C]laims of false arrest, malicious prosecution, [and] physical injury . . . are tort claims." Dumonde v. United States, 87 Fed. Cl. 651, 653 (2009). Plaintiff here has alleged substantially similar claims that are claims construed as state law tort claims. See, e.g., Hicks v. United States, No. 10-793, 2011 WL 3319563, at *1 (Fed. Cl. Aug. 1, 2011) (listing plaintiff's "litany of torts . . . including assault, battery, false imprisonment, [and] false arrest").

The Court of Federal Claims lacks jurisdiction over any claim sounding in tort. 28 U.S.C. § 1491(a)(1) (stating that the court "shall have jurisdiction to render judgment upon any claim against the United States . . . in cases not sounding in tort."); Shearin v. United States, 992 F.2d 1195, 1197 (Fed. Cir. 1993) ("It is well settled that the [Court of Federal Claims] lacks . . . jurisdiction to entertain tort claims.").

Thus, this court is without jurisdiction to hear plaintiff's claims of tortious conduct by the U.S. Marshal who was acting in his official capacity.

    c.    Plaintiff's Constitutional Claims Against the United States

"An arrest is quintessentially a seizure of the person, and therefore subject to the Fourth Amendment's reasonableness requirement." McClish v. Nugent, 483 F.3d 1231, 1238 (11th Cir. 2007). "The Fourth Amendment's freedom from unreasonable searches and seizures encompasses the plain right to be free from the use of excessive force in the course of an arrest." Lee v. Ferraro, 284 F.3d 1188, 1197 (11th Cir. 2002). Because plaintiff complains about his arrest, his claims could also be construed as constitutional violations under the Fourth Amendment.

"[F]or this Court to have jurisdiction over constitutional . . . claims, the claims must be money mandating." Tasby v. United States, 91 Fed. Cl. 344, 346 (2010) (citing United States v. Mitchell, 463 U.S. 206, 216, 218 (1983)). The Fourth Amendment, however, does not mandate the payment of money. Brown, 105 F.3d at 623-24 (holding that the Court of Federal Claims lacks jurisdiction over Fourth Amendment claims because they are not money-mandating). Accordingly, the Court of Federal Claims lacks jurisdiction to hear plaintiff's claims against the U.S. Marshal acting in his official capacity that could be construed as a Fourth Amendment violation.

Plaintiff also references the Fifth, Eighth and Fourteenth Amendments in his complaint, Compl. 12, albeit without alleging specific harms under those Amendments. Like the asserted claims under the Fourth Amendment, claims under the Eighth and Fourteenth Amendments—as well as a Due Process claim under the Fifth Amendment—are not money mandating. See, e.g., LeBlanc v. United States, 50 F.3d 1025, 1028 (Fed. Cir. 1995) (stating that the Due Process Clause of the Fifth Amendment, the Fourteenth Amendment's Due Process and Equal Protection Clauses do not mandate payment of money by the government); Trafny v. United States, 503 F.3d 1339, 1339 (Fed. Cir. 2007) (stating that the Eighth Amendment prohibitions of excessive bail or fines, as well as cruel and unusual punishment, are not money-mandating). For this reason, the court cannot hear plaintiff's claims under the Fifth, Eighth, or Fourteenth Amendments.

Without jurisdiction to hear plaintiff's claims, the complaint **MUST BE DISMISSED** in its entirety. Prior to dismissal, however, the court considers whether it is in the interest of justice to transfer the complaint to a district court.

II.     Transfer Under 28 U.S.C. § 1631

When this court determines that it lacks jurisdiction, it must transfer the case to a court where the action could have been brought if the transfer "is in the interest of justice." 28 U.S.C. § 1631 (2012); see also Tex. Peanut Farmers v. United States, 409 F.3d 1370, 1374-75 (Fed. Cir. 2005) (stating that the trial court may order transfer sua sponte). According to the Federal Circuit, "[t]he phrase 'if it is in the interest of justice' relates to claims which are nonfrivolous and as such should be decided on the merits." Galloway Farms, Inc. v. United States, 834 F.2d 998, 1000 (Fed. Cir. 1987) (quoting Zinger Construction Co. v. United States, 753 F.2d 1053, 1055 (Fed. Cir. 1985)).

Among the factors the court considers as it determines whether to transfer this case are: (1) the res judicata effect of a decision on the merits issued by the United States District Court for the Northern District of Florida on a complaint Mr. Dillard filed in 2011, and (2) the limitations periods applicable to plaintiff's claims.

A. The Res Judicata Effect of an Earlier Merits Decision

The arrest about which Mr. Dillard complains here occurred in Florida. The teachings of the Eleventh Circuit Court of Appeals are binding on the federal courts in Florida. See, e.g., United States v. Jones, 731 F. Supp. 2d 1275, 1281 (M.D. Fla. 2010) ("Eleventh Circuit precedent is binding on this Court . . . ."). According to the Eleventh Circuit,

> [t]he doctrine of res judicata, or claim preclusion, will bar a subsequent action if: (1) the prior decision was rendered by a court of competent jurisdiction; (2) there was a final judgment on the merits; (3) the parties were identical in both suits; and (4) the prior and present causes of action are the same.

Davila v. Delta Air Lines, Inc., 326 F.3d 1183, 1187 (11th Cir. 2003) (internal quotation marks omitted).

Mr. Dillard filed a complaint in 2011 on the same facts that are at issue in the instant complaint— in particular, his July 20, 2009 arrest in Tampa, Florida pursuant to an arrest warrant for armed robbery of a credit union.[3] 2d Am. Compl. at 8, Dillard v. Goodman, No. 11-21 (N.D. Fla. May 18, 2011). In the earlier filed case, Goodman, Mr. Dillard brought claims of false arrest, false imprisonment, malicious prosecution, and the use of excessive force against a list of eighteen non-Federal defendants, including a credit union, its owner and employees, as well as numerous Florida law enforcement officers, prosecutors, and judges, and an individual described as a labor worker. Id. at 2-4, 15.

---

[3] Although Mr. Dillard acknowledged to this court that he previously filed a lawsuit in federal court dealing with the "same or similar facts" as pled in his current complaint, Compl. 8, the case he identified was a state court case. The court's review of PACER shows that prior to filing the instant action, Mr. Dillard, in fact, had filed four separate actions in two different federal courts based on the facts of his July 20, 2009 arrest, of which only the first action received a decision on the merits. Dillard v. Goodman, No. 11-21 (N.D. Fla. dismissed Jan. 4, 2012); Dillard v. Reschke, No. 13-12 (N.D. Fla. dismissed Feb. 15, 2013); Dillard v. First Credit Union Bank, No. 13-1150 (M.D. Fla. dismissed May 9, 2013); Dillard v. First Credit Union Bank, No. 13-1368 (M.D. Fla. dismissed May 29, 2013). The latter three actions were dismissed under the "three strike rule" which prohibits a prisoner—who has had at least three previous federal actions dismissed on the grounds that the action was either frivolous, malicious or failed to state a claim upon which relief may be granted—from proceeding in federal court in any future action without paying the court's filing fee. See 28 U.S.C. § 1915(g) (2012).

With the exception of the use of excessive force claim against various Tampa law enforcement officers, the magistrate judge recommended dismissal of all of the claims for failure to state a claim upon which relief may be granted, stating:

> Plaintiff alleges no facts suggesting that the warrant for his arrest was not supported by probable cause, and the existence of probable cause is an absolute bar to a § 1983 claim for false arrest.
>
> Since Plaintiff was arrested pursuant to a warrant (hence, a probable cause determination was made), his only conceivable claim is a claim for the common-law tort of malicious prosecution. . . .
>
> . . . Moreover, on the basis of Plaintiff's allegations it is clear that the trial judge and state prosecutor are immune from suit.

Report & Recommendation at 4-6, Goodman, No. 11-21 (Oct. 10, 2011) ("Report").

Regarding Mr. Dillard's claim of use of excessive force, the magistrate judge determined that the Northern District of Florida was the wrong venue for that claim, noting that the arrest had occurred in Tampa, which is located in the Middle District of Florida. Id. at 6. The magistrate judge did not find a transfer to be in the interest of justice and recommended "that Plaintiff's excessive-force claims be dismissed without prejudice to Plaintiff's right to assert such claims in the appropriate district court." Id. at 5-6.

The district judge adopted the recommendation of the magistrate judge and dismissed Mr. Dillard's complaint for failure to state a claim upon which relief may be granted.[4] Order, Goodman, No. 11-21 (Jan. 4, 2012). Judgment entered on the same day. Judgment, Goodman, No. 11-21 (Jan. 4, 2012).

A dismissal for failure to state a claim upon which relief may be granted constitutes a final judgment on the merits. See O'Berry v. State Attorneys Office, 241 F. App'x 654, 660 (11th Cir. 2007). And as the Eleventh Circuit recognized in Davila, a final judgment on the merits is one of the factors that determines whether a subsequent action might be barred under the doctrine of res judicata.

---

[4] The district court's dismissal order, however, erroneously identified as the reason for dismissal of the use of excessive force claim the failure to state a claim upon which relief may be granted, Order at 1-2, Goodman, No. 11-21, rather than improper venue, Report at 5-6, Goodman, No. 11-21. As properly understood, dismissal of the use of excessive force claim in Goodman was not on the merits.

8

In Goodman, Mr. Dillard also alleged violations of civil rights, mental distress, lies under oath, public humilities, false identifications, loss of wages, mental anguish, cruel and unusual punishment, harassment, manipulation, and "threatening to give me life and prison." 2d Am. Compl. at 15, Goodman, No. 11-21.

In the complaint now before this court, Mr. Dillard includes a similar list of allegations, specifically: harassment, mental anguish, emotional distress, public humiliation, loss of wages, manipulation, false identification, feeling of unjust treatment, defamation of character, false light defamatory statement, alleged allegation, judicial misconduct, negligence, nugatory warrant, nuisance, breach of duty, impeachment, treason of constitutional federal rights, perjury, fraud, cruel and unusual punishment, and miscarriage of justice. Compl. 25-26. Because all of plaintiff's claims here—other than use of excessive force claim, and the related failure to intervene claim—were dismissed for failure to state a claim upon which relief may be granted, the earlier filed Goodman decision which was issued by a court of competent jurisdiction, as a final judgment on the merits, bars the relitigation of such claims under the doctrine of res judicata. See Davila, 326 F.3d at 1187.

Another factor that informs the applicability of the res judicata doctrine is the identity of parties in the various filed actions. In O'Berry, the plaintiff filed two complaints "which arose 'out of the same nucleus of operative fact'[,] [were] 'based on the same factual predicate,' [and] involved essentially the same defendants and the same causes of action." Id. at 660. But the fact that O'Berry named similar, and not identical, defendants in his second complaint did not preclude a finding of res judicata. Id.

As in O'Berry, the complaints before this court and the Northern District of Florida arise out of "the same nucleus of operative fact," and involve "essentially the same defendants and the same causes of action," namely Mr. Dillard's July 20, 2009 arrest for armed robbery, and his claims against the law enforcement officers, prosecutors, judges and witnesses involved with his arrest and subsequent prosecution.

Thus, the Goodman decision serves as res judicata for all claims that would have been considered in that merits decision against all defendants in the current complaint.[5] See O'Berry, 241 F. App'x at 660; Davila, 326 F.3d at 1187. Not only does the doctrine of res judicata pertain to claims "that were raised in the prior action, but also to claims that could have been raised previously. . . . [and] [i]n determining whether the prior and

---

[5] Although Mr. Dillard brought claims against forty-one defendants in his complaint in this court, as compared to eighteen defendants in his complaint in the Northern District of Florida, the additionally named defendants do not serve to prevent Goodman from serving as res judicata for Mr. Dillard's claims in this court. See O'Berry, 241 F. App'x at 659-60.

9

present causes of action are the same, [a court] must decide whether the actions arise out of the same nucleus of operative fact, or [are] based upon the same factual predicate." Davila, 326 F.3d at 1187 (internal quotation marks omitted).

Mr. Dillard's complaints in both this court and the Northern District of Florida arise out of his July 20, 2009 arrest for armed robbery. In this action, Mr. Dillard has added to his earlier claims a complaint against the Governor of the State of Florida, Rick Scott—alleging a failure to supervise state employees. Compl. 22-23. Although Mr. Dillard could have raised this claim against the governor in his previous complaint before the Northern District of Florida, he failed to do so. The Goodman decision thus serves as res judicata for Mr. Dillard's new claim against the governor in his current complaint. See Davila, 326 F.3d at 1187.

As to those claims that cannot be reasserted under the doctrine of res judicata, it is not in the interest of justice to transfer them.

The only claims made by Mr. Dillard that are not barred by res judicata are: (1) his claim of use of excessive force against Tampa law enforcement officers—which was not the subject of the merits decision in Goodman—and (2) his claim of failure to intervene against the U.S. Marshal—which is necessarily linked to the use of excessive force claim.

In determining whether the interest of justice counsels in favor of transferring these claims, the court considers the impact of the relevant statute of limitations.

B.   Statute of Limitations

Claims for use of excessive force or failure to intervene may be construed as constitutional claims under the Fourth Amendment. See Edwards v. Shanley, 666 F.3d 1289, 1294 (11th Cir. 2012) (considering alleged Fourth Amendment violations of use of excessive force and failure to intervene). As such, Mr. Dillard's claim against Tampa law enforcement officers could be brought under 42 U.S.C. § 1983 (2012). See Edwards, 666 F.3d at 1294-95 (considering plaintiff's section 1983 action that plaintiff was deprived of a federal right, and that the person who caused the deprivation acted under color of state law). In addition, Mr. Dillard's claim against the U.S. Marshal acting in his individual capacity could be construed as a Bivens action, a private cause of action to recover damages against a federal agent for violations of constitutional rights. Bivens v. Six Unknown Fed. Narcotics Agents, 403 U.S. 388 (1971).

The statute of limitations for a section 1983 action in Florida is four years from the date of injury. See Chappell v. Rich, 340 F.3d 1279, 1283 (11th Cir. 2003). Similarly, the statute of limitations for a Bivens action in Florida is also four years. See Sanchez v. Sanchez, No. 10-288, 2014 WL 4376143, at *2 (N.D. Fla. Sept. 3, 2014). The Fourth Amendment claims for use of excessive force or failure to intervene, further to either

section 1983 or <u>Bivens</u>, expired on July 20, 2013, well before Mr. Dillard filed his current complaint in this court on December 16, 2014.

Alternatively, Mr. Dillard could state a tort claim against the United States—based on his claim against the U.S. Marshal acting in his official capacity—and such a claim would fall under the Federal Tort Claims Act (FTCA), which recognizes claims against a law enforcement officer of the United States arising out of assault or battery. 28 U.S.C § 2680(h) (2012). Because, the FTCA has a two-year statute of limitations, 28 U.S.C. § 2401(b) (2012); <u>Nelson. v. United States</u>, No. 12-1308, 2013 WL 5651805, at *1 (M.D. Fla. Oct. 15, 2013), any FTCA action against the United States would have expired two years after Mr. Dillard's July 20, 2009 arrest, or on July 20, 2011.[6]

A review of the earlier filed cases further indicates that Mr. Dillard would not have been able to rely on the filing date for any of his earlier complaints in the Florida district courts, as a "re-filed complaint [that] could . . . 'relate back' and revive a dismissed complaint," to survive [the] various limitations periods that have run. <u>Abram-Adams v. Citigroup, Inc.</u>, 491 F. App'x 972, 975-76 (11th Cir. 2012) (quoting <u>Dade Cnty. v. Rohr Indus., Inc.</u>, 826 F.2d 983, 989 (11th Cir. 1987) ("The second complaint in <u>Dade</u> was filed after the statute of limitations had expired, and the earlier dismissal [of the first complaint] had 'the effect of placing the parties in a position as if the [first] suit had never been filed.' Thus, the claims had become time-barred.")).

Because plaintiff's claims that were not barred by res judicata are time-barred, it is not in the interest of justice to transfer them.

---

[6] The court notes that a claim under the FTCA also requires a plaintiff to exhaust administrative claims prior to filing suit against the United States. 28 U.S.C. § 2675(a) (2012); <u>See also, e.g.</u>, Report & Recommendation, <u>Miller v. United States</u>, 2011 WL 1750442, at *3-4 (N.D. Fla. Mar. 29, 2011) (No. 10-38) (barring FTCA claims for failure to first pursue administrative remedies). There is no indication, to the court's knowledge, that Mr. Dillard did so prior to naming the U.S. Marshal in his official capacity in his complaint; this failure to exhaust his administrative claims would also serve to bar any FTCA claim Mr. Dillard might have.

11

III.   Conclusion

For the reasons discussed more fully above, the court finds that it lacks jurisdiction over plaintiff's claims, and that it is not in the interest of justice to transfer the complaint. Defendant's motion to dismiss is **GRANTED**.  Plaintiff's complaint is **DISMISSED** without prejudice pursuant to RCFC 12(b)(1).  The Clerk of Court will enter judgment for defendant.  No costs.

IT IS SO ORDERED.

_____
PATRICIA E. CAMPBELL-SMITH
Chief Judge